IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*Electronically Filed*

| | | |
|---|---|---|
| DAVID MALAGESE and | ) | |
| GABRIELLE CHAPPELL, on behalf | ) | |
| of all persons similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 3:17-CV-489-GNS-RSE |
| | ) | |
| v. | ) | **PLAINTIFFS' MOTION TO COMPEL** |
| | ) | **DISCOVERY** |
| | ) | |
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT TO**
**PRODUCE DOCUMENTS RESPONSIVE TO DISCOVERY REQUESTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 37.1 of the Local

Rules of Civil Procedure, and for the reasons more specifically set forth in the accompanying

Brief in Support, Plaintiffs David Malagese and Gabrielle Chappell request this Court to compel

Defendant Fifth Third Bank to produce documents responsive to Plaintiffs' requests for

production related to Fifth Third's overdraft fee practice.  Plaintiffs' request a hearing and oral

argument on this motion.

# TABLE OF CONTENTS

*Page*

I     INTRODUCTION ............................................................................................. 1

    A.    Fifth Third Customer Welcome Kit .................................................... 2

    B.    Employee Training Documents Relating to the Bank's Overdraft Policies .......... 2

    C.    Brochures, Pamphlets and Promotional Material Given to Customers Explaining Overdrafts/Overdraft Policies ................................................... 2

    D.    Video Explaining Overdrafts/Overdraft Policies ................................. 3

    E.    Change In Terms Documents/Notices .................................................. 3

II    CONCISE STATEMENT OF NATURE OF THE CASE ................................. 4

III   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ................... 4

IV   LEGAL STANDARD ..................................................................................... 11

V    VERBATIM LISTING OF DISCOVERY RESPONSES AND ARGUMENT ............... 11

    A.    Fifth Third Customer Welcome Kit .................................................... 11

    B.    Employee Training Documents Relating to the Fifth Third's Overdraft Policies 15

    C.    Brochures, Pamphlets and Promotional Material Given to Customers Explaining Overdrafts/Overdraft Policies ................................................... 16

    D.    Video Explaining Overdrafts/Overdraft Policies ................................. 17

    E.    Change In Terms Documents/Notices .................................................. 18

VI   CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Hiser v. Volkswagen Grp. of Am., Inc.,*
      No. 5:14-CV-170-TBR-LLK, 2016 WL 11409339 (W.D. Ky. Aug. 1, 2016)................ 11

**Rules**

Fed. R. Civ. P. 26(b) ........................................................................................... 1, 11

Fed. R. Civ. P. 34 .................................................................................................... 1

**Regulations**

12 C.F.R. 1005.17 ........................................................................................... 12, 18

## I    <u>INTRODUCTION</u>

The scope of discovery in a civil action is broad, and allows parties to obtain discovery regarding any nonprivileged matters that are relevant to their claims or defenses considering the proportional needs of the case.  Fed. R. Civ. P. 26(b).  Parties are permitted to seek discovery through a variety of means, including written discovery, depositions, or most often, a combination of both.

Although Rule 26(b) permits broad discovery, and this is a proposed class action, Plaintiffs agreed to bifurcate discovery such that the first phase would primarily apply to Plaintiffs' individual claims against Fifth Third, and class and further merits discovery would occur in a second phase after dispositive motion practice.  Even so, Plaintiffs made clear to Fifth Third that there were certain subjects on which they needed discovery that would apply not just to the individually named Plaintiffs, but to the putative class as a whole.  One of these subjects was Fifth Third's overdraft fee practice throughout the duration of the proposed class period. The parties memorialized this understanding in their amended joint report outlining their proposed discovery plan, which they filed with the Court on May 3, 2018, and the Court adopted on May 15, 2018.  (Dkt. Nos. 42, 43.)

While Fifth Third has actively participated in discovery, including meet and confer conferences with Plaintiffs to address discovery deficiencies, Fifth Third has withheld certain documents that relate to its overdraft fee practice during the putative class period, and has failed to confirm whether its production of certain categories of documents is complete.  These documents are responsive to Plaintiffs' First Set of Requests for Production; were referred to by Fifth Third's Rule 30(b)(6) witness as the basis for his deposition testimony; and have been the subject of meet and confer discussions between the parties.  Although the parties have been able

1

to resolve the vast majority of discovery deficiencies subject to meet and confer efforts, these few categories of documents remain in dispute.

Given that the parties have reached an impasse as to these discovery issues, Plaintiffs' seek the Court's assistance. Specifically, Plaintiffs' move to compel the Court to require Fifth Third to produce the following documents which are responsive to the identified Requests for Production ("RFP"):

A. **Fifth Third Customer Welcome Kit**

- All additional versions of any agreement and other contracts, including all additional versions of opt-in agreements and forms, contractual disclosures that contain information regarding the overdraft fee practice, and all documents regarding, referring or relating to the agreements, including but not limited to all schedules of fees for services and notices or messages sent to customers reflecting revisions or modifications, (RFP No. 4);

- Documents describing Fifth Third's overdraft policies, (RFP Nos. 7(a)-(c), (e)).

B. **Employee Training Documents Relating to the Bank's Overdraft Policies**

- All documents pertaining to how employees are to respond to questions or complaints concerning overdraft fees, (RFP No. 7(g)).

C. **Brochures, Pamphlets and Promotional Material Given to Customers Explaining Overdrafts/Overdraft Policies**

- All additional versions of any agreement and other contracts, including all additional versions of opt-in agreements and forms, contractual disclosures that contain information regarding the overdraft fee practice, and all documents regarding, referring or relating to the agreements, including but not limited to all schedules of fees for services and notices or messages sent to customers reflecting

revisions or modifications, (RFP No. 4);

- Documents describing Fifth Third's overdraft policies, (RFP No. 7(a)-(c), (e)).

**D.    Video Explaining Overdrafts/Overdraft Policies**

- All additional versions of any agreement and other contracts, including all additional versions of opt-in agreements and forms, contractual disclosures that contain information regarding the overdraft fee practice, and all documents regarding, referring or relating to the agreements, including but not limited to all schedules of fees for services and notices or messages sent to customers reflecting revisions or modifications, (RFP No. 4);

- Documents describing Fifth Third's overdraft policies, (RFP No. 7(a)-(c), (e)).

**E.    Change In Terms Documents/Notices**

- All versions of any agreements and other contracts, including all versions of opt-in agreements and forms, contractual disclosures that contain information regarding the overdraft fee practice, and all documents regarding, referring or relating to the agreements, including but not limited to all schedules of fees for services and notices or messages sent to Plaintiffs reflecting any revision or modification of that/those documents, during the class period, (RFP No. 3(a));

- All additional versions of any agreement and other contracts, including all additional versions of opt-in agreements and forms, contractual disclosures that contain information regarding the overdraft fee practice, and all documents regarding, referring or relating to the agreements, including but not limited to all schedules of fees for services and notices or messages sent to customers reflecting revisions or modifications, (RFP No. 4).

II      **CONCISE STATEMENT OF NATURE OF THE CASE**

This is a proposed consumer class action based on Fifth Third's unlawful conduct in assessing overdraft fees when there was enough money in customers' accounts to cover the transactions, in direct breach of the Bank's consumer account agreements.

III     **STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

In preparation for discovery, in April 2018, the parties prepared a Joint 26(f) report laying out their differing views on discovery.  (Dkt. No. 36.)  Generally speaking, the parties differed on the need to bifurcate discovery, and limit an initial phase to Plaintiffs' individual claims.

After the initial scheduling conference, the parties further met and conferred to address the bifurcation of discovery, and Plaintiff explained that if discovery was bifurcated and limited primarily to the Plaintiffs' individual claims, there would still be a few subjects on which Plaintiffs would need broader discovery in the initial phase.  (*See* Ex. A, Letter from Eddie Kim to Joseph Tucker and related Email.)[1]  Specifically, Plaintiffs needed 1) all agreements relating to Fifth Third's overdraft fee practice for the full class period; 2) information regarding Fifth Third's overdraft fee practice, including how and when different types of transactions post to the account and how overdraft fees are determined and when they post, that have been in effect during the class period; and 3) transactional information for the named Plaintiffs, including transactional database records.[2]   Fifth Third agreed to these requests, and they were

---

[1] Emails between counsel in this case often include long email strings reflecting conversations on prior issues.  Plaintiffs are only producing the portion of those email strings that reflect the discussion at issue.

[2] Notably, Fifth Third has refused to produce the transactional database records for the named Plaintiffs, or respond to basic discovery requests related to its core database program.  Although this is not a subject of this motion to compel, Plaintiffs will be seeking transactional data, and complete information about the core database, for the full class and class period in the next phase of discovery.

memorialized in the parties' amended joint report outlining the proposed discovery plan, which was adopted by the Court.  (Dkt. Nos. 42, 43.)

Following entry of the Joint Scheduling Order, the parties began discovery.  Relevant to this motion, Plaintiffs served their first set of requests for production on June 28, 2018, to which Fifth Third provided objections and responses on September 4, 2018.  Fifth Third also produced documents on September 5, 2018.   Plaintiffs' requests sought documents specific to the Plaintiffs and their individual claims, but also more generally requested documents related to Fifth Third's overdraft fee practice.  (*See* Ex. B, Plaintiffs' First Set of Requests for Production ("RFP"), including Fifth Third's Responses.)

In early September 2018, the parties sought an extension of the initial discovery deadline, as well as the other deadlines in the case, because the Court had yet to rule on Plaintiffs' motion for leave to amend the operative complaint, and the parties were continuing to work together to refine the claims at issue in the suit.  (Dkt. No. 50.)  The Court entered an Order extending all deadlines by 120 days.  (Dkt. No. 51.)

Throughout the fall, the parties continued to discuss the claims at issue and, in mid-January, Plaintiffs indicated their intention to take a Rule 30(b)(6) deposition of Fifth Third. Plaintiffs served the notice of the deposition (which was set for February 22, 2019) to Fifth Third on January 29, 2019.  (Ex. C, Notice of Fifth Third 30(b)(6) Deposition.)

Following service of the notice, Fifth Third's counsel indicated that the date set for the deposition would not work due to scheduling conflicts, and asked if Plaintiffs would be willing to move the deposition to mid-April.  Knowing this would require a second extension of the Scheduling Order, Plaintiffs agreed to the extension assuming the Court granted it, which it did. (Dkt. Nos. 57, 58.)

In the meantime, Plaintiffs met and conferred with Fifth Third regarding deficiencies in its responses to Plaintiffs' first requests for production.  A call was held between the parties on February 4, 2019, and Plaintiffs' followed up by email the next day summarizing the call and the discovery that Fifth Third had failed to produce, but needed to provide.  (Ex. D, Email from Emily Kirk to Joseph Tucker.)

On March 19, 2019, Plaintiffs sent an email to Fifth Third asking when they could expect the supplemental production given that they had requested it to be produced by the end of February.  Plaintiffs' also requested dates for the April deposition of Fifth Third.  (Ex. E, Email from Emily Kirk to Young-Eun Park.)  While Plaintiffs received Fifth Third's supplemental production of documents on March 26, 2019, along with its supplemental responses, Fifth Third did not provide dates for the deposition.  (Ex. F, Fifth Third's Responses to Plaintiffs' Supplemental Discovery Requests.)

A few days later, Fifth Third asked if Plaintiffs again would be willing to extend the discovery deadline by 90 days as a result of Fifth Third's acquisition of another financial institution which would preoccupy its employees.  Plaintiffs agreed, and the Court again amended the Scheduling Order.  (Dkt. Nos. 59, 60.)   Fifth Third's counsel also proposed June 19 as the date for the Rule 30(b)(6) deposition, to which Plaintiffs agreed.  (Ex. G, Emails between counsel regarding deposition date.)  On May 13, 2019, Plaintiffs' again noticed Fifth Third's 30(b)(6) deposition for June 19.  (Ex. H, Notice of Fifth Third's Rule 30(b)(6) Deposition.)

On June 19, 2019, Plaintiffs took Fifth Third's Rule 30(b)(6) deposition.  Plaintiffs covered a number of topics, including general information about Fifth Third's overdraft practice.  When discussing the account opening process, Fifth Third's witness, Ben Mendelsohn, discussed a Welcome Kit that is provided to customers.  Mr. Mendelsohn also described a video and

promotional materials that are provided to customers to explain the policies, as well as related

employee training outlines:

> Q.     Okay.  So let's -- let's talk about a customer that comes in -- in the branch.  After getting the basic information and going through the kinds of accounts that are available and the customer elects to take a checking account, what's the next thing that -- that happens?
>
> A.     So prior to the conversation, the customer is provided with our welcome kit, which includes the rules and regulations applicable to all of our deposit accounts.  The banker would have a discussion with the customer about what the right account for them would be and then would process it in our systems.
>
> Q.     So every customer that sits down to talk  about a checking account, the first thing that's  done, they're given a welcome kit with the rules and  regulations?
>
> A.     That's correct.
>
> Q.     And if they chose to open an account,  great, if they don't, they -- they leave with your welcome kit?
>
> A.     That's right.
>
> Q.      Is there a process in opening the account to go over the posting process and the overdraft fees?
>
> A.     It is one of the discussion topics that we expect our bankers to cover.
>
> Q.     Is there specific training materials that outlines the -- what -- what you want them to cover?
>
> A.     Yes.
>
> Q.     In -- in doing that training, are they supposed to reference either the rules or the reg -- and regulations, the opt-in form or something else?
>
> A.     So they have three points of reference, the rules and regulations that are provided to the customer, the opt-in form where we require a decision, and the video content explaining an overdraft that you showed earlier on the website.

7

Q.      And so as it -- as it relates to training,  what are they trained to -- to do with the rules and regulations as it relates to overdrafts?

A.      To explain how the processing works.

Q.       Are -- are they supposed to open up the  rules and regulations and point out the section?

A.      I am out of my depth on that topic. I  don't have the -- the details on exactly how the training is -- is handled.

(Ex. I, Deposition Transcript of Ben Mendelsohn ("Mendelsohn Dep. Tr."), June 19, 2019, at 141:14 – 143:10.)

The witness further stated:

Q.      Okay.  Is there any fee schedule outside  of the -- the fee information provided in the rules and regulations?

MR. TUCKER:  Objection to the form.  You can answer.

A.      There are instances on product content or disclosures where we also reference certain fees applicable to that account.

Q.      Are there any brochures or pamphlets used with customers that explain or discuss overdraft coverage?

A.       Yes.  The welcome kit and deposit account rules and regulations that are provided to the customer at account origination or at a time where a customer changes their account type cover all of the overdraft disclosures.

Q.      In a pamphlet type?

A.       It is a package of a welcome kit with the deposit account rules and regulations.

Q.       Maybe I'm confused.  So I -- I understand what's in the rules and regulations.  Is there a separate document or a set of documents that discuss overdraft issues?

A.      Yes.

Q.      And that's called what?

> A.       It's part of the welcome kit with the deposit account rules and regulations that is provided to the customer at account origination.
>
> Q.       Is it a letter?  Is it a form?  Is it a brochure, marketing type brochure?
> A.        It is a portfolio with pages that you turn that explains the different products available to the customer and also encapsulates the deposit account rules and regulations for the customer's review.
>
> Q.       As it relates to overdrafts?
>
> A.       Yes.

(*Id*., at 146:7- 147:17.)  In the course of the deposition, Mr. Mendelsohn also referenced change in account terms notices that are sent to customers when Fifth Third changes its account agreements and other contracts (documents that Fifth Third previously said it did not have in response to Plaintiffs' discovery requests). (Ex. I, at 92:25 – 94:3; Ex. F.)

At the conclusion of the deposition, Plaintiffs indicated to Fifth Third that they would be following up regarding the documents mentioned in the deposition but that had not been produced.  Although the parties had not received the deposition transcript yet, because the discovery period was 30 days from closing, Plaintiffs emailed Fifth Third on June 29, 2019 and requested the Welcome Kit, copies of brochures, pamphlets and any other promotional material given to customers explaining overdraft policies, the video shown to new customers, and the employee training materials relevant to overdraft policies.  The deposition transcript arrived a few days later and Fifth Third asked if there were any additional documents needed per the transcript.  Plaintiffs responded requesting the change in terms documents.  (*See* Ex. J, Email between counsel regarding supplemental discovery needed.)

During the week of July 15, Fifth Third called and asked if Plaintiffs would again be willing to extend the discovery deadline by 60 days because there was concern that Fifth Third

could not pull together the requested documents by the end of the discovery period.  Plaintiffs

stated that they would not oppose Fifth Third's motion, which the Court granted.  (Dkt. Nos. 61,

62.)

Plaintiffs did not hear anything further from Fifth Third until Plaintiffs emailed on

September 17, 2019 asking when they could expect the supplemental discovery since the initial

phase of discovery was set to expire on September 27, 2019.  Fifth Third responded that day by

sending the supplemental discovery, and apologized because it thought the discovery had already

been sent but, in fact, it had not.  (Ex. K, Email from Young-Eun Park, with second supplemental

discovery responses, dated August 27, 2019.)  Of the six categories of documents Plaintiffs had

requested, Fifth Third objected outright to three, refusing to provide any documents in response.

This included the request for production of the Welcome Kit and employee training materials.

Further, Fifth Third only provided six pages of documents, along with a link to a video,

responsive to the other three categories of documents requested (*i.e.*, promotional materials,

video, and changes in terms), which raises questions as to why it was necessary for Fifth Third to

obtain a discovery extension for such a small production.

On September 24, 2019, Plaintiffs emailed Fifth Third again, requesting documents

responsive to the categories to which Fifth Third had objected.  (Ex. L, Email from Emily Kirk to

Young-Eun Park.)  Further, given the small size of the production, Plaintiffs asked Fifth Third to

confirm that the production included all responsive documents within Fifth Third's possession,

custody and control related to promotional materials, changes in terms, and the video, as well as

to provide the dates on which the produced documents had been used by the Bank.  Plaintiffs

asked for a response by September 26, 2019, but Fifth Third has not responded to date.

IV       **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense and proportional to
> the needs of the case, considering the importance of the issues at
> stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

This Court has interpreted this provision, as amended in 2015, to "allow parties the opportunity

to fully explore information that may bear on their claims or defenses" with the exception that

the "information sought cannot be privileged, it must be relevant, and the scope must be

proportional to the case." *Hiser v. Volkswagen Grp. of Am., Inc.,* No. 5:14-CV-170-TBR-LLK,

2016 WL 11409339, at *2 (W.D. Ky. Aug. 1, 2016), *objections overruled,* No. 5:14-CV-00170-

TBR, 2017 WL 402988 (W.D. Ky. Jan. 30, 2017).  While the movant bears the burden of

demonstrating relevance, the bar is low, as relevance is "construed broadly." *Id.*  In addition, it

is the opposing party who "must show that the material sought either falls beyond the scope

of relevance, or is so marginally relevant that the potential harms of production outweigh the

presumption in favor of broad disclosure." *Id.* at *4-5 (citation omitted).

V       **VERBATIM LISTING OF DISCOVERY RESPONSES AND ARGUMENT**

A.       **Fifth Third Customer Welcome Kit**

In Plaintiffs' First Requests for Production, they specifically asked for not only all

versions of agreements and contracts, but also all versions of disclosures containing information

regarding Fifth Third's overdraft fee practice and all documents referring to the agreements.  In

addition, Plaintiffs' requested documents describing overdrafts and overdraft fees, Fifth Third's

policies related to them, and communications with customers regarding the policies.  *See*, RFP Nos. 4 and 7 (a)–(c), (e):

### REQUEST FOR PRODUCTION NO. 4:

To the extent the AGREEMENTS or other contracts provided to PLAINTIFFS that YOU identified as responsive to Request No. 3 differ from the AGREEMENTS or other contracts  that YOU provided to other members of the putative class as defined in the SAC, please produce ALL additional versions of any AGREEMENT(s) and other contracts, including all additional versions of opt-in agreements and forms (pursuant to Regulation E, 12 C.F.R. 1005.17), contractual disclosures that contain information regarding the overdraft fee practice, and all DOCUMENTS regarding, referring or relating to the AGREEMENT(s), including but not limited to all schedules of fees for services and notices or messages sent to customers reflecting any revision or modification of that/those DOCUMENT(s), during the CLASS PERIOD.

### REQUEST FOR PRODUCTION NO. 7:

With respect to YOUR OVERDRAFT POLICIES, produce the following:

a   All DOCUMENTS in which YOU define, describe or otherwise use the terms "Overdraft" and/or "Overdraft Fees;"

b   All DOCUMENTS, including communications with customers, reflecting YOUR policies, practices, or procedures of levying overdraft fees and/or the sequence or manner in which YOU post debits to YOUR customer accounts;

c   All DOCUMENTS created, received or sent at any time, in which YOU state or describe the process by which, or the time at which, ITEMs will be debited from, or credited to, a customer's account; and

e.   All DOCUMENTS created, received or sent reflecting the manner by which YOU post and batch each type of transaction (including but not limited to deposits, cash withdrawals, checks, automatic payments, electronic debit card transactions, as well as resultant fees).

(Ex. B, Request for Production (Set One) with Def. Resp.)

Fifth Third objects to producing the Welcome Kit because it was not used during the time Plaintiffs opened their accounts.  (Ex. K.)  Even if this is the case, and Fifth Third has provided no information as to when the Welcome Kit was used by the Bank, the information in the

Welcome Kit is clearly responsive to Plaintiffs' discovery requests, and includes information falling into those broader categories of discovery that Fifth Third agreed to produce in the first phase of discovery even if not specifically applicable to the named Plaintiffs.

According to Fifth Third's 30(b)(6) witness, Mr. Mendelsohn, the Welcome Kit includes integral information about the Bank's overdraft fee practice as presented to customers. Specifically, he states there is a portfolio that "encapsulates the deposit account rules and regulations for the customer's review" as it relates to overdrafts.  (Ex. I, Mendelsohn Dep. Tr., at 146:7-147:17.)

Information describing Fifth Third's overdraft fee practices is clearly responsive to RFP Nos. 4 and 7 (a)-(c) and (e).  In fact, RFP No. 7(b) specifically asks for communications with customers reflecting the Bank's policies, practices or procedures of levying overdraft fees. Moreover, whether or not Fifth Third was using the Welcome Kit when Plaintiffs opened their accounts should not matter given that the parties agreed to broader discovery related to Fifth Third's overdraft fee practices during the entire putative class period.

Moreover, as Plaintiffs noted when they requested broader discovery for certain categories of information, the individually named Plaintiffs have maintained accounts with Fifth Third throughout what amounts to the entirety of the proposed class period.  The class period runs from August 2011 through the date on which the class is certified.  (Dkt. Nos. 35, 52.) Plaintiff Chappell opened her account in July 2011 and closed it in 2016, and Plaintiff Malagese opened his account in March 2013 and continues to maintain an account.  Accordingly, whether or not Plaintiffs received the Welcome Kit specifically, the Kit clearly describes Fifth Third's overdraft practices as they applied during the time in which Plaintiffs have maintained accounts with the Bank.  Moreover, since Fifth Third did not provide dates as to when it used the

Welcome Kit, it is impossible to determine whether Plaintiff Malagese may have received it when he opened a joint account with Fifth Third in 2014, or if the Plaintiffs may have received during a subsequent inquiry about different products or services offered by the Bank.

When asked about account opening and how Fifth Third's overdraft policies are explained to customers, Mr. Mendelsohn referred to the Welcome Kit as a basis for his testimony.  He did not specify that the Welcome Kit did not apply to the time period in which Plaintiffs opened their accounts, nor did he describe alternative account opening processes.  He only referred to use of the Welcome Kit., and Fifth Third's counsel did not object to this line of questioning.  Given that Mr. Mendelsohn relied on the Welcome Kit as the basis for his testimony, and counsel did not object, it is not appropriate for Fifth Third to now withhold the Kit from Plaintiffs' review.

Without reviewing the Welcome Kit, Plaintiffs cannot evaluate how the information provided within it interacted with the account agreement.  And even if the additional materials in the Welcome Kit are considered extrinsic to the account agreements, it will be necessary to review such extrinsic evidence, particularly if the Court determines that the contractual language at issue is ambiguous, which has been the situation in multiple similar class action cases filed around the country.

The Welcome Kit includes information about Fifth Third's overdraft fee practice during the putative class period, which is consistent with the time in which at least one of the named Plaintiffs has maintained an account with the Bank.  This information is clearly responsive to Plaintiffs' discovery requests, and falls within the broader categories of information that the parties agreed would be produced in the first phase of discovery.  Accordingly, Plaintiffs seek the Court's assistance in compelling Fifth Third to produce the Welcome Kit.

**B.     Employee Training Documents Relating to the Fifth Third's Overdraft Policies**

Fifth Third's employee training documents are also at issue in this litigation, and are responsive to Plaintiffs' first set of requests for production:

**REQUEST FOR PRODUCTION NO. 7:**

> With respect to YOUR OVERDRAFT POLICIES, produce the following:
>
> g.  All DOCUMENTS pertaining to how employees are to respond to questions or complaints concerning overdraft fees.

(Ex. B, Request for Production (Set One) with Def. Resp.)

In response to this request, Fifth Third objected that the materials sought were irrelevant to this action.  *Id.*   Further, when Plaintiffs requested this information again, after Mr. Mendelsohn referred to employee training materials in his deposition, Fifth Third again responded that the training materials were irrelevant, but added a litany of additional objections such as the request was vague, ambiguous, overly broad, burdensome, and disproportionate to the need of the case.

Again, when Plaintiffs asked Mr. Mendelsohn about Fifth Third's account opening process, he specifically referred to what employees are to explain to customers about the Bank's overdraft fee practice.  He stated that employees are to describe "the posting process and the overdraft fees," and that the employees have three points of reference that they use to explain the Bank's policies:  the account agreement, the Regulation E opt-in form, and a video.  They use these materials to "explain how the processing works."  (Ex. I, Mendelsohn Dep. Tr., at 141:14 – 143:10.)

Employee training as it relates to explanations of Fifth Third's overdraft practices are relevant to this action for the same reasons mentioned in the Section V.A., *supra*, and if Plaintiffs

are not permitted to examine these training materials, they cannot determine how employees are trained to explain the account agreement to customers, and how these explanations may impact customers' understanding of the overdraft practices.   And, at a minimum, these materials will provide extrinsic evidence of the meaning of contractual terms if the terms at issue are determined by the Court to be ambiguous.

To the extent Fifth Third suggests that this request is ambiguous, overly broad, etc., Mr. Mendelsohn explicitly stated in his testimony that there are specific training materials outlining what employees are to explain to customers about overdrafts in the account opening process. Those are the materials Plaintiffs are seeking, although if there are other relevant and responsive training materials on the topic of Fifth Third's overdraft fee practices, those should be produced as well.

Given that the training documents used by employees throughout the putative class period (which includes the time Plaintiffs have maintained accounts with the Bank) explain the Bank's overdraft program, they are relevant and applicable in the first phase of discovery. Accordingly, Plaintiffs seek the Court's assistance in compelling the Bank to produce the employee training materials used by Fifth Third to explain its overdraft fee practice to its customers during the putative class period.

### C.      Brochures, Pamphlets and Promotional Material Given to Customers Explaining Overdrafts/Overdraft Policies

Plaintiffs requested in discovery all information describing Fifth Third's overdraft fee policies.  (*See* RFP Nos. 4 and 7 (a)-(c) and (e) which are fully set forth in Section V.A., *supra*.) Mr. Mendelsohn refers to these types of materials throughout his deposition, and if given to customers during the putative class period, they are responsive for the same reasons described in Sections V.A. and V.B.

Plaintiffs requested this information from Fifth Third following Mr. Mendelsohn's deposition.  Fifth Third did not object to producing these promotional materials and referred Plaintiffs to the *six* pages of documents that it produced in response to Plaintiffs' supplemental requests.[3]  Given that the six pages produced included documents that were purportedly responsive to multiple categories of requested documents, Plaintiffs are concerned that the production does not include all responsive promotional materials related to overdraft practices that were used during the putative class period.

Plaintiffs requested Fifth Third confirm whether the documents produced were all of the responsive documents on this subject within its possession, custody, or control.  (Ex. L.)  Fifth Third did not respond.  Accordingly, Plaintiffs seek the Court's assistance in compelling the Bank to confirm whether it has produced all responsive documents and, if not, produce all brochures, pamphlets and promotional material given to customers explaining overdrafts/overdraft policies, and specifying the dates on which the materials were used.

### D.   Video Explaining Overdrafts/Overdraft Policies

Plaintiffs requested in discovery all information describing Fifth Third's overdraft fee policies.  (*See* RFP Nos. 4 and 7 (a)-(c) and (e) which are fully set forth in Section V.A., *supra*.)

Mr. Mendelsohn, in his testimony, describes a video that is used by employees to educate customers on Fifth Third's overdraft fee practices. (Ex. I, Mendelsohn Dep. Tr., at 141:14 – 143:10.)  Plaintiffs requested this video in their supplemental discovery requests following Mr. Mendelsohn's deposition, and Fifth Third responded by providing a link to a video.  (Ex. L.)  Plaintiffs simply want to confirm that this was the only video used, and the dates on which it was

---

[3] Fifth Third indicated that the six pages it produced included not only brochures and similar documents, but also changes in terms documents, meaning the six pages consist of multiple types of responsive documents – not just promotional materials.

used by the Bank.  Plaintiffs requested this information from Fifth Third, but it did not respond.

Accordingly, Plaintiffs seek the Court's assistance in compelling the Bank to confirm whether

the video it produced is the only video used for purposes of explaining overdrafts, and the dates

on which it has been used.  If there are other responsive videos, Plaintiffs' request the Court to

compel Fifth Third to produce them.

### E.      Change In Terms Documents/Notices

Plaintiffs requested any documents reflecting changes in account agreement terms.  *See,*

RFP Nos. 3(a) and 4:

> ### REQUEST FOR PRODUCTION NO. 3:
>
> With respect to DOCUMENTS you have provided to PLAINTIFFS regarding PLAINTIFFS' checking account(s) and any other account(s) PLAINTIFFS have or have had with YOU, please produce:
>
> a.   ALL versions of any AGREEMENT(s) and other contracts, including all versions of opt-in agreements and forms (pursuant to Regulation E, 12 C.F.R. 1005.17), contractual disclosures that contain information regarding the overdraft fee practice, and all DOCUMENTS regarding, referring or relating to the AGREEMENT(s), including but not limited to all schedules of fees for services and notices or messages sent to PLAINTIFFS *reflecting any revision or modification of that/those DOCUMENT(s),* during the CLASS PERIOD
>
> ### REQUEST FOR PRODUCTION NO. 4:
>
> To the extent the AGREEMENTS or other contracts provided to PLAINTIFFS that YOU identified as responsive to Request No. 3 differ from the AGREEMENTS or other contracts  that YOU provided to other members of the putative class as defined in the SAC, please produce ALL additional versions of any AGREEMENT(s) and other contracts, including all additional versions of opt-in agreements and forms (pursuant to Regulation E, 12 C.F.R. 1005.17), contractual disclosures that contain information regarding the overdraft fee practice, and all DOCUMENTS regarding, referring or relating to the AGREEMENT(s), including but not limited to all schedules of fees for services and notices or messages sent to customers *reflecting any revision or modification of that/those DOCUMENT(s),* during the CLASS PERIOD.

(Ex. B (emphasis added).)

18

Fifth Third did not produce any change in terms documents in its initial document production.  Accordingly, Plaintiffs inquired about these documents in the subsequent February 2019 meet and confer discussions.  (Ex. D.)  Fifth Third responded that it did not have any communications between itself and Plaintiffs regarding any change in terms notifications.  (Ex. F.)  Although it seemed odd that Fifth Third would not have had records regarding change in terms notifications that went out during the time in which Plaintiffs have had their accounts, especially since the account agreement changed substantially in approximately 2012, Plaintiffs opted to wait to question Fifth Third about it in the 30(b)(6) deposition.

When questioned, Mr. Mendelsohn confirmed that Fifth Third sends change in terms documents to customers, usually by including them with statements.  He also confirmed that for at least the changes made in 2017 and 2018, change in terms notices were sent to customers.  (Ex. I, Mendelsohn Dep. Tr., at 92:25 – 94:3.)

Plaintiffs again requested these documents from Fifth Third following the 30(b)(6) deposition, and Fifth Third responded with the production of the six documents.  (Exs. J, K.)  Plaintiffs followed up and asked Fifth Third to confirm if it had produced all of the responsive change in terms documents in its possession, custody or control. Fifth Third did not respond.  (Ex. L.)  Accordingly, Plaintiffs seek the Court's assistance in compelling the Bank to confirm whether it has produced all responsive documents and, if not, produce all change in terms documents responsive to Plaintiffs' requests for production.

## VI      **CONCLUSION**

Although today is the last day in the discovery period, Plaintiffs could not have brought this motion to compel sooner given the time Fifth Third took to respond to Plaintiff's supplemental discovery requests following Mr. Mendelsohn's deposition.  The parties'

willingness to work together has led to the resolution of several discovery disputes (some not mentioned here) and has helped to define the remaining disagreements.  At this point, however, the parties have reached an impasse as to the discovery issues highlighted in this motion. Accordingly, Plaintiffs seek the Court's assistance and request the Court to compel the Bank to produce the remaining responsive documents.

Dated: September 27, 2019          Respectfully submitted,

                             */s/ Richard D. McCune*
                             Richard D. McCune (*Pro Hac Vice*)
Emily J. Kirk (*Pro Hac Vice*)
McCUNE WRIGHT AREVALO LLP
3281 East Guasti Road, Suite 100
Ontario, CA  91761
Tel: (909) 557-1250
Fax: (909) 557-1275
Email:  rdm@mccunewright.com
       ejk@mccunewright.com

John C. Whitfield
Caroline Ramsey Taylor
**WHITFIELD BRYSON & MASON LLP**
19 North Main Street
Madisonville, Kentucky 42431
Tel: 270-821-0656
Fax: 270-825-1163
Email: john@wbmllp.com
       caroline@wbmllp.com

Gary E. Mason, *Pro Hac Vice*
**WHITFIELD BRYSON & MASON LLP**
5101 Wisconsin Ave. NW, Ste. 305
Washington, DC 20016
Tel: (202) 429-2290
Fax: (202) 429-2294
Email: gary@wbmllp.com

Taras Kick, *Pro Hac Vice*
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel: (310) 395-2988
Fax: (310) 395-2088
Email: taras@kicklawfirm.com

Jeffrey M. Ostrow, *Pro Hac Vice*
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
Email: ostrow@kolawyers.com

*Attorneys for Plaintiffs,*
*and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed using the Court's CM/ECF system.

Notice of this filing will be served on all parties of record by operation of the CM/ECF system,

and said parties may access the filing through the ECF system.


*/s/ Richard D. McCune*